Kathleen M. HANSEN, Plaintiff-Appellant,

v.

A.H. ROBINS COMPANY, INC., Defendant-Appellee.

Supreme Court

*No. 83–368–CQ. Argued May 31, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 578.)

For the plaintiff-appellant there were briefs by *J. Michael Egan* and *Eckman, Strandness & Egan, P.A.*, Minneapolis, Minnesota, and oral argument by *J. Michael Egan*.

For the defendant-appellee there was a brief by *Edmund W. Powell* and *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee and oral argument by *Edmund W. Powell*.

Amicus curiae brief was filed by *Randall E. Reinhardt* and *Warshafsky, Rotter, Tarnoff, Gesler & Reinhardt, S.C.*, Milwaukee, and *William L. McCusker* and *McCusker & Robertson, S.C.*, Madison, for The Wisconsin Academy of Trial Lawyers.

WILLIAM G. CALLOW, J. This is a certification of a question of law from the United States Court of Appeals for the Seventh Circuit, pursuant to Chapter 821, Stats.[1] The issue certified for determination is:

---

[1] Pursuant to the rule-making authority conferred by sec. 751.12, Stats., this court created the Uniform Certification of Questions

"When does the cause of action accrue within the meaning of the Wisconsin statute of limitations for personal injury actions, Wis. Stat. secs. 893.04, .54, when the injury to the plaintiff was caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance?" (Footnote omitted.)

The facts giving rise to this question of law can be briefly stated. On May 28, 1974, Kathleen M. Hansen had a "Dalkon Shield" intrauterine device (IUD)[2] inserted into her uterus by Dr. Fabiny. The "Dalkon Shield" is manufactured and sold by A.H. Robins Company, Inc. In late May, 1978, Hansen began experiencing various problems, including bleeding between menstrual periods, inability to digest food comfortably, nausea, diarrhea, nervousness, cramping, abdominal pain, and occasional fever. On June 13, 1978, she consulted Dr. Macken about her condition. After conducting an examination, he concluded that Hansen's symptoms could be related to gastroenteritis. He added that it was unlikely she had pelvic inflammatory disease (PID).[3] On June

of Law Rule, Chapter 821, Stats., 107 Wis. 2d xiii (1982), effective January 1, 1983. This court is empowered to answer a question of law certified by the United States Supreme Court, the United States Court of Appeals, or the highest appellate court of another state. *See* sec. 821.01, which provides:

"**Power to answer.** The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state."

[2] An intrauterine device (IUD) is a contraceptive device which fits within the uterus. It is made of plastic or metal and has a tail string which extends through the cervical canal and into the vagina.

[3] Pelvic inflammatory disease (PID) is caused by the presence of bacteria in the uterus.

16, 1978, Dr. Macken notified Hansen that her test results were normal and noted that she was asymptomatic on that day. On June 26, 1978, Hansen again sought medical attention, this time from Dr. Fabiny. He removed the Dalkon Shield and concluded that she probably had PID. Hansen recovered from the PID infection. However, the disease left her fallopian tubes blocked, rendering her sterile.

On June 24, 1981, Hansen commenced a diversity action against Robins in the United States District Court for the Western District of Wisconsin to recover damages for personal injuries arising out of her use of the Dalkon Shield. She alleged that the Dalkon Shield had a defective design which caused her to contract PID. On March 5, 1982, Robins moved for summary judgment, alleging that Hansen's claim was barred by Wisconsin's three-year statute of limitations for personal injury actions. The United States District Court concluded that under Wisconsin law a personal injury claim accrues and the statute of limitations begins to run when, as a result of a negligent act, the plaintiff sustains some injury—no matter how slight. The court determined that Hansen was injured "sometime prior to June 13, 1978," and, therefore, her claim accrued before that date. Since the complaint was not filed until June 24, 1981, the court held that Hansen's claim was barred by the statute of limitations. Hansen appealed to the United States Court of Appeals for the Seventh Circuit which certified the aforementioned question of law to this court for determination.

The applicable statute of limitations for this action is set forth in secs. 894.14 and 893.205 (1), Stats., 1977.[4] Those sections provide in pertinent part:

[4] Effective July 1, 1980, secs. 893.14 and 893.205, Stats., were revised and renumbered secs. 893.04 and 893.54, respectively. Chapter 323, Laws of 1979.

"893.14 **Actions, time for commencing.** The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued. . . ."

"893.205 **Within 3 years.** Within 3 years: (1) An action to recover damages for injuries to the person for such injuries sustained. . . ."

Whether Hansen's claim is barred or preserved depends upon when it accrued and thereby commenced the running of the statute of limitations.

Basically, there are three points in time when a tort claim may be said to accrue: (1) when negligence occurs, (2) when a resulting injury is sustained, and (3) when the injury is discovered. *Holifield v. Setco Industries, Inc.*, 42 Wis. 2d 750, 759, 168 N.W.2d 177 (1969); *Denzer v. Rouse,* 48 Wis. 2d 528, 532, 180 N.W.2d 521 (1970). We have held that the time of the negligent act alone is not the key to accrual of tort claims. Traditionally, under Wisconsin law " '[a] cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.' " *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488 (1906). A tort claim is not capable of enforcement until both a negligent act and an accompanying injury have occurred. *Holifield v. Setco Industries, Inc.,* 42 Wis. 2d at 755–56. Although the negligence and resulting injury are often simultaneous, occasionally an injury will not be sustained until a subsequent date. Therefore, we have held that tort claims accrue on the date of injury. *Peterson v. Roloff,* 57 Wis. 2d 1, 4, 203 N.W.2d 699 (1973); *Holifield v. Setco Industries, Inc.,* 42 Wis. 2d at 755–56; *Olson v. St. Croix Valley Memorial Hospital,* 55 Wis. 2d 628, 632, 201 N.W.2d 63 (1972).

The foregoing rule equitably regulates the statute of limitations in the majority of cases. Most often a claim-

ant is aware of an injury when it occurs. Therefore, the claimant has the full statutory period in which to initiate an action. In some instances, however, the negligence may cause an injury which is initially latent. Such an injury may not be discovered until it is manifested at a later date. Nevertheless, under the current rule the claim accrues when the injury occurs. The result being that the statutory period for initiating an action may have partially, or in some instances totally, expired before the claimant knows of the injury. This situation has arisen in several Wisconsin cases.

*Rod v. Farrell*, 96 Wis. 2d 349, 291 N.W.2d 568 (1980), was a medical malpractice action involving the surgical repair of a congenital hernia on a four-year-old boy, Michael Rod. No one was aware of any problems with the operation when it was performed in 1955. In 1975 Rod discovered that portions of his vasa had been surgically removed, rendering him sterile. The severed vasa was linked to the hernia surgery Rod had undergone in 1955. In 1976 Rod commenced an action against the doctor who performed the hernia operation. The doctor moved for summary judgment on the ground that Rod's claim was time barred. The circuit court denied the motion but was reversed by the court of appeals. On review this court adhered to the rule that a claim accrues and the statute of limitations begins to run at the time of injury. Finding that Rod was injured during the hernia operation in 1955, the court held that his claim was barred by the three-year statute of limitations.

In *Peterson v. Roloff, supra,* the defendant, Dr. Kritter, operated on Winnie Peterson in 1954 to remove her gall bladder. Dr. Kritter negligently performed the surgery by failing to completely remove the gall bladder and the cystic duct. In addition, he left a piece of gauze in Peterson's abdomen. Peterson was unaware of these problems until 1971 when she began to experience ab-

dominal pain. She consulted another physician who eventually performed a second operation. During the course of this surgery, the medical problems caused by Dr. Kritter's negligence were discovered. In 1971 Peterson brought a medical malpractice action against the coadministrators of Dr. Kritter's estate. The defendants moved for summary judgment on the ground that the complaint was untimely. The trial court granted the motion. On appeal, this court found that Peterson was injured at the time of the surgery in 1954, and therefore her claim accrued and the three-year statute of limitations began to run on that date. Accordingly, the court held that Peterson's claim was barred even though she was unaware of the injury until after the statute of limitations had expired. This same conclusion was reached under similar circumstances in *McCluskey v. Thranow*, 31 Wis. 2d 245, 142 N.W.2d 787 (1966), and *Reistad v. Manz*, 11 Wis. 2d 155, 105 N.W.2d 324 (1960).

The aforementioned cases demonstrate that using the date of injury as the benchmark for accrual of claims can yield extremely harsh results. Indeed, we have recognized the injustice of commencing the statute of limitations before a claimant is aware of his or her right of action. *Rod v. Farrell*, 96 Wis. 2d at 353. This problem could be solved by adopting what is commonly known as the "discovery rule." Under this rule, a claim does not accrue until the injury is discovered or in the exercise of reasonable diligence should be discovered. In the past this court has declined to adopt the discovery rule on the ground that a "change of the statute of limitations is peculiarly a question of policy which should be left to the legislature." *Peterson v. Roloff*, 57 Wis. 2d at 5; *McCluskey v. Thranow*, 31 Wis. 2d at 250–51; *Reistad v. Manz*, 11 Wis. 2d at 159–60. We have not, however, ignored the problem. In *Roloff* we noted that the three-year statute of limitations for medical malpractice ac-

tions was too short and strongly urged the legislature to amend it. 57 Wis. 2d at 7. In 1979 the legislature adopted a limited discovery rule for medical malpractice claims. Chapter 323, Laws of 1979. Sec. 893.55, Stats., was created to provide:

"**Limitation of actions; medical malpractice.** (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

(2) If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1), whichever is later.

(3) When a foreign object which has no therapeutic or diagnostic purpose or effect has been left in a patient's body, an action shall be commenced within one year after the patient is aware or, in the exercise of reasonable care, should have been aware of the presence of the object or within the time limitation provided by sub. (1), whichever is later."

The legislature has not taken similar ameliorative action for tort claims outside the realm of medical malpractice. We believe the time has come to consider adoption of the discovery rule for such claims.

The notion that a tort claim (other than medical malpractice) accrues when the injury is discovered or is reasonably discoverable is not completely foreign to

Wisconsin law. We recently took a step in this direction in *Wisconsin Natural Gas v. Ford, Bacon & Davis Construction*, 96 Wis. 2d 314, 291 N.W.2d 825 (1980). That case involved a suit by the Wisconsin Natural Gas Company to recover damages caused by the negligent installation of a 14-mile natural gas pipeline. The gas company alleged that the contractor failed to provide adequate support for the pipe in light of anticipated shifting soil conditions and that the engineering inspector failed to sufficiently supervise the installation. The faulty installation resulted in damage to the pipeline which occurred gradually and was evidenced by an increasing incidence of "casing shorts." The first casing short was found in May of 1969. The gas company filed its action in June of 1975. The defendant argued that the claim was barred by the applicable six-year statute of limitations under sec. 893.19(5), Stats., 1977. We held that the gas company's action was timely. In reaching this conclusion, Justice Coffey, writing for the court, stated: "A single casing short is not the type of evidence that this court considers to be 'sufficiently significant to alert the injured party to possibility of a defect.'" *Id.* at 325. Therefore, the gas company's claim did not accrue when the first casing short was noticed. Like the discovery rule, the foregoing reasoning indicates that a claim does not accrue until the claimant knows or should know of the injury.

On balance, public policy favors the adoption of the discovery rule. There are two conflicting public policies raised by the statute of limitations: "(1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained." *Peterson v. Roloff*, 57 Wis. 2d at 6.

Prompt adjudication of tort claims is highly desirable and should be encouraged by statutes of limitations. The

greater the time period between the negligence and the filing of a claim, the more difficult it is to gather and present complete, accurate evidence. The lapse of time may also increase the risk of fraudulent claims. Although the discovery rule will allow actions to be filed more than three years after the date of injury, it will not leave defendants unprotected from stale and fraudulent claims. Under the rule a claim accrues when the injury is discovered or reasonably *should* have been discovered. Therefore, it does not benefit claimants who negligently or purposely fail to file a timely claim. Further, defendants are protected by the requirement of proof at trial. The plaintiff bears the burden of proving negligence.

In any event the problems caused by the lapse of time must be balanced against the policy in favor of allowing diligent claimants to bring meritorious claims. It is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury. Although theoretically a claim is capable of enforcement as soon as the injury occurs, as a practical matter a claim cannot be enforced until the claimant discovers the injury and the accompanying right of action. In some cases the claim will be time barred before the harm is or could be discovered, making it impossible for the injured party to seek redress. Under these circumstances the statute of limitations works to punish victims who are blameless for the delay and to benefit wrongdoers by barring meritorious claims. In short, we conclude that the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions.

This court has the power to establish when claims accrue. With the exception of sec. 893.55, Stats., for medical malpractice claims, the Wisconsin statutes do not speak to this issue. In the past this court has fixed

the time of accrual for tort claims, and we retain the authority to do so now. Past deference to the legislature does not preclude our adoption of the discovery rule. As Justice Hallows pointed out in his dissent in *Peterson v. Roloff, supra,* this court has made legal changes in at least two instances after previously deferring to the legislature.

"In *Schwenkhoff v. Farmers Mut. Automobile Ins. Co.* (1960), 11 Wis. 2d 97, 104 N.W.2d 154, we solemnly said the failure of the legislature to enact a bill designed to change the rule that an unemancipated minor could not maintain an action in tort against its negligent parent for personal injuries constituted an expression by the legislature that no change should be made by this court. Yet three years later we reversed our position in *Goller v. White* (1963), 20 Wis. 2d 402, 122 N.W.2d 193, on the basis of *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N.W.2d 618, and said the reasons advanced in *Schwenkhoff* for not changing the parental immunity rule no longer applied. In *Holytz* we held it was our responsibility to change a court-made rule when we deemed the change necessary in the interest of justice even though the legislature had refused to make the changes. Likewise, in *Smith v. Congregation of St. Rose* (1953), 265 Wis. 393, 398, 61 N.W.2d 896, we stated dissatisfaction with the charitable immunity doctrine should be addressed to the legislature. But in *Kojis v. Doctors Hospital* (1961), 12 Wis. 2d 367, 373, 107 N.W.2d 131, 107 N.W.2d 292, this court changed its position and abolished the doctrine of immunity." 57 Wis. 2d at 16.

In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled.

In the instant case Hansen exercised reasonable diligence in seeking medical help for her condition. She saw Dr. Macken on June 13, 1978, and was told that it was unlikely she had PID. The record reveals that on June 16, 1978, she was asymptomatic. Sometime thereafter the symptoms returned. On June 26, 1978, Hansen went to see Dr. Fabiny who finally diagnosed her condition as PID. We cannot say that Hansen should have discovered her injury any earlier. She could not be expected to personally diagnose her condition or consult with a physician more frequently than she did. We conclude that, under the discovery rule adopted in this opinion, Hansen's claim accrued on June 26, 1978. Therefore, her complaint, filed on June 24, 1981, was timely.

*By the Court.*—Question answered and cause remanded to the United States Court of Appeals for the Seventh Circuit for further proceedings.