**MILWAUKEE AREA VOCATIONAL TECHNICAL AND ADULT EDUCATION DISTRICT, Plaintiff–Appellant,**

v.

**UNITED STATES STEEL CORPORATION, Defendant–Appellee.**

No. 87–1553.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 1987.

Decided June 1, 1988.

John A. Casey, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellant.

David A. Luptak, Law Dept., USX Corp., Pittsburgh, Pa., for defendant-appellee.

Before WOOD, Jr., MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Plaintiff, Milwaukee Area Vocational Technical and Adult Education District (MATC), brought this action against United States Steel Corporation (USS)[1] for the cost of replacement and repair of steel used in the construction of MATC's campus buildings. USS moved for summary judgment on the ground that MATC's claim was time-barred. The district court granted the motion and MATC appeals. We affirm.

I.

In the mid–1970's, MATC commenced extensive construction projects involving the

1. The United States Steel Corporation is now named USS, a Division of USX.

construction of its North Campus Center, its South Campus Center, and an addition to its West Campus Center. The specifications for all three buildings called for the use of "weathering steel" in the construction of the buildings' roofs and portions of the exterior walls. The specifications for the "weathering steel" were nearly identical for all three buildings. The brand of "weathering steel" actually used in the construction was Cor–Ten steel manufactured by USS. The construction at the North Campus Center and South Campus Center was substantially completed in July, 1976. The construction at the West Campus Center was substantially completed by November, 1977.

In December, 1978, MATC discovered unusual rusting and staining of the Cor–Ten steel at its North Campus Center. Two architects employed by MATC, James Pauers (MATC's Manager of Construction Services) and Lawrence Earll (a consulting architect) investigated the problem. A memorandum by MATC's consulting architect dated February 8, 1979, stated that "[i]nvestigation has revealed that [Cor–Ten] steel of this g[au]ge can rust thru unless back painted." The memo concluded:

> Review of the shop drawing draws the conclusion that it is a "poor design" of the gutter installation that is contributing to the rusting of the soffit panels. The estimated cost to correct the problems is $60,000.00. This would include the removal of all the gutters; replacing those soffit panels indicating rusting action; caulking at the joining of the soffit panel to the fascia panel; and reinstalling the gutter.

Another document prepared for MATC in February, 1979, stated that the solution to the problem "is to remove all of the drip/gutters; replace defective panels, caulk at the intersection of the soffit and fascia [panels], and reinstall the drip/gutter," and that "MATC concluded that this was a poorly designed detail." The memo also noted that the problem with the rusting of the Cor–Ten steel was not observed at the South Campus Center.

The project architects, whom MATC thought shouldered the "probable responsibility" for the problem, conducted their own investigation. In a letter dated July 3, 1979, the project architects noted, among other things, that the Cor–Ten steel needed additional weathering.

Despite having notice of the unusual rusting and staining in December, 1978, MATC waited until March, 1985, to bring this action. MATC's complaint, naming USS as the sole defendant, alleged that the Cor–Ten supplied by USS was defective, that USS knew or should have known that the Cor–Ten was subject to excessive corrosion and deterioration, that USS negligently failed to disclose that the Cor–Ten was defective, and that the defective Cor–Ten was unreasonably dangerous to MATC's property, employees, and students. USS moved for summary judgment on the ground that MATC's action was barred by the six-year limitation period contained in WIS.STAT.ANN. § 893.52 [2] (West 1983). The district court granted USS's motion.[3]

## II.

### ANALYSIS

WIS.STAT.ANN. § 893.52 (West 1983) places a six-year limitations period on ac-

---

2. WIS.STAT.ANN. § 893.52 (West 1983) provides:

**Action for damages for injury to property**
An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed.

3. Before moving for summary judgment on limitations grounds, USS moved for summary judgment on the ground that the six-year statute of repose contained in WIS.STAT.ANN. § 893.89 (West 1983) barred MATC's action. The district court denied this motion. USS contends on appeal that even if the district court incorrectly granted summary judgment under § 893.52, we should nonetheless affirm the district court because the undisputed material facts show that it is entitled to judgment as a matter of law under § 893.89. Because we affirm the district court's grant of summary judgment on the limitations issue, we need not reach this possible alternative ground of affirmance.

tions "not arising on contract, to recover damages for an injury to real or personal property...." Under § 893.52, the statute of limitations begins to run "after [a] cause of action accrues." Thus, we must affirm the district court's grant of summary judgment if the undisputed facts establish that MATC's action accrued more than six years before it filed its complaint in March, 1985.

In *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.*, 96 Wis.2d 314, 291 N.W.2d 825 (Wis.1980), the Wisconsin Supreme Court held that under § 893.52 (then codified as WIS.STAT. § 893.19(5)):

> [A] cause of action accrues and the statute of limitations ... begins to run *when the evidence of injury to property*, resulting from the negligent act upon which the action is based, is sufficiently *significant to alert the injured party to the possibility of a defect.* The injury need not, however, be of such magnitude as to identify the causal factor.

96 Wis.2d at 324, 291 N.W.2d at 830 (emphasis in original) (quoting *Tallmadge v. Skyline Construction, Inc.*, 86 Wis.2d 356, 359, 272 N.W.2d 404, 405 (Wis.Ct.App. 1978)). In *Wisconsin Natural Gas*, the plaintiff had retained the defendant, a pipeline engineering and consulting firm, to design and supervise the installation of a 14–mile natural gas transmission pipeline. The plaintiff sued the defendant after there were a number of "casing shorts" in the pipeline. The defendant argued that the plaintiff's cause of action was time-barred on the ground that the limitations period began to run as soon as the pipeline suffered its first "casing short." There was evidence, however, that "casing shorts" are a regular occurrence in a pipeline and often caused by factors other than the improper installation of a pipeline. In view of this evidence, the court held that "the discovery of a single casing short, in a relatively new pipeline, is not 'sufficiently significant' to alert the [plaintiff] to the possibility of major defects throughout the entire 14 mile pipeline." 96 Wis.2d at 325, 291 N.W.2d at 830–31. Instead, the court held that the plaintiff's cause of action did not accrue "until a number of 'casing shorts' rendered the cathodic protection process ineffective and necessitated an extensive excavation and repair program to clear the pipeline of the shorts." *Id.*

Relying heavily on *Wisconsin Natural Gas*, the Wisconsin Supreme Court subsequently adopted the "discovery rule" for purposes of determining the accrual of all tort causes of action. *See Hansen v. A.H. Robins, Inc.*, 113 Wis.2d 550, 560, 335 N.W. 2d 578, 583 (Wis.1983). In *Hansen*, the plaintiff brought suit against the manufacturer of an intrauterine device alleging that the device caused her to contract pelvic inflammatory disease. Plaintiff filed her suit within three years of the time she had been diagnosed as suffering from pelvic inflammatory disease but more than three years after she first suffered the effects of the disease. Her problem had been previously diagnosed by a doctor as gastroenteritis. The manufacturer sought to have the plaintiff's claim dismissed as time-barred on the ground that the three-year limitations period governing plaintiff's cause of action accrued when plaintiff first suffered injury as a result of the intrauterine device, even though plaintiff was not aware the device caused her injury until she was diagnosed as suffering from pelvic inflammatory disease. The manufacturer relied upon several Wisconsin cases holding that a negligence action accrues at the time an injury is suffered even if the plaintiff was not aware of the injury. *See Rod v. Farrell*, 96 Wis.2d 349, 291 N.W.2d 568 (Wis.1980) (three-year limitations period barred claim for surgery that was negligently performed in 1955 even though plaintiff did not discover injury until 1975); *Peterson v. Roloff*, 57 Wis.2d 1, 203 N.W.2d 699 (Wis. 1973) (three-year limitations period barred action for surgery that was negligently performed in 1954 even though plaintiff did not suffer effects of negligence until 1971). The *Hansen* court rejected the rule enunciated in *Rod* and *Peterson*, holding instead that tort claims are not deemed to accrue until "the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." 113 Wis.2d at 560, 335 N.W.2d at 583. The court then

held that plaintiff's cause of action was not time-barred because it did not accrue until plaintiff was diagnosed as suffering from pelvic inflammatory disease.

The discovery rule was further explained by the Wisconsin Supreme Court in *Borello v. U.S. Oil Co.*, 130 Wis.2d 397, 388 N.W.2d 140 (Wis.1986). In *Borello*, the court was asked to determine whether a personal injury action based upon the plaintiffs' contraction of "metal fume fever" from a defective furnace was timely filed. The plaintiff in *Borello* had suffered from several ailments which she attributed to a newly-installed furnace. Various physicians, however, diagnosed her as suffering from conditions that had nothing to do with the furnace, such as viral infections, allergies, and psychoneurosis. Finally, a doctor diagnosed her as suffering from "metal fume fever" as a result of the defective furnace. The court in *Borello* held that the plaintiff's cause of action did not accrue until that diagnosis. According to the *Borello* court, it was "apparent from the general tenor of *Hansen* that this court did not, by the language 'claims shall accrue on the date the injury is discovered,' mean the date on which the manifestations of the injury shall first appear." 130 Wis.2d at 408, 388 N.W.2d at 144–45. Rather, the court determined that the limitations period did not begin until the plaintiff knew the nature of her illness as diagnosed by her doctor. 130 Wis.2d at 409, 388 N.W.2d at 145. The court stated that the statute of limitations "should not commence to run until the plaintiff with due diligence knows to a reasonable probability of injury, its nature, its cause, and the identity of the allegedly responsible defendant." 130 Wis. 2d at 420, 388 N.W.2d at 149.

Here, MATC concedes that the undisputed facts established that it was aware that it suffered an "injury" related to the Cor–Ten steel more than six years before it filed suit. Nonetheless, MATC contends under *Hansen* and *Borello* it had no obligation to file its action against USS within six years of the date of the discovery of its injury because it perceived that the problem was related to " 'poor design' of the gutter installation that is contributing to the rusting of the soffit panels." It also relies upon the fact that the problem observed at the North Campus in December, 1978, was not observed at the South Campus and that, as late as July, 1979, the project architect (the same architect MATC believed to be responsible for the problem) advised MATC that the steel needed additional weathering. According to MATC, these facts establish that it did not know until after March, 1979, the nature of the injury, the cause of the injury, or the identity of the responsible party as required by *Borello.* We disagree.

Although *Borello* makes clear that under the discovery rule a plaintiff must be aware of some causal connection between the injury and the defendant's product, *Borello* does not help MATC in the present case. *Borello*, like *Hansen*, was a personal injury case in which the plaintiff could not be deemed to be objectively aware that she had a cause of action against *any party* until her illness was correctly diagnosed by a physician. Moreover, *Borello* makes clear that the nature of the injury must be taken into account in determining whether a cause of action has accrued under the discovery rule:

> The rule in its full meaning, meaning consistent with *Hansen,* was explicated by Chief Justice Kenison of the New Hampshire Supreme Court in *Arthur Raymond v. Eli Lilly and Company,* 117 N.H. 164, 170–171, 371 A.2d 170 (1977):
>
> > 'One might read several discovery rule cases and conclude that the courts are applying two substantially distinct rules. In most cases, the courts frame the rule in terms of the plaintiff's discovery of the causal relationship between his injuries and the defendant's conduct. In some cases ... a court will simply state that, under the discovery rule, a cause of action accrues when the plaintiff discovers or should have discovered his injury. Some other courts use both statements of the rule within the same case. The reason for these apparent differences is that most cases in which the court states

the rule in terms of the discovery of the injury, the injury is the kind that puts the plaintiff on notice that his rights have been violated. Thus, there is no reason for the court to express the rule in terms of the discovery of the causal connection between the harm and the defendant's conduct. In a case such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule means. We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of the courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.'

130 Wis.2d at 409–410, 388 N.W.2d at 145.

In the present case, MATC was put on notice of a problem related to the Cor–Ten steel and its possible connection with USS more than six years before it filed its complaint. The facts in the record establish that MATC knew in December, 1978, that there was unusual rusting and staining of the Cor–Ten steel. These facts alone were certainly sufficient to put MATC on notice that its rights had been violated and that the problem was probably caused by either defective design, defective Cor–Ten steel supplied by USS, or some combination of defective design and defective steel. It does not take a specialist to conclude that, once the problem with the rusting of the Cor–Ten steel was discovered, a significant possibility exists that the problem may be with the steel itself. *Cf. Holy Family*

*Catholic Congregation v. Stubenrauch Associates, Inc.*, 136 Wis.2d 515, 402 N.W. 2d 382 (Wis.Ct.App.1987) (stating that plaintiff's cause of action against defendants for a defectively constructed roof accrued under discovery rule when plaintiff became aware of leaks in roof).[4] In any event, MATC clearly had such notice by February, 1979. In February, 1979, its consulting architects noted that: "[Cor–Ten] steel of this [gauge] can rust thru unless back painted"; that " 'poor design' of the gutter installation ... is *contributing* to the rusting ..."; and, that "[t]he solution is to remove all the drip/gutters; caulk at the intersection of the soffit and fascia, and reinstall the drip/gutter." (Emphasis added.) From that point in time, at the latest, MATC had six years to investigate fully and to determine to its own satisfaction which particular entity or entities it sought to hold accountable. Furthermore, the fact that the unusual rusting and staining were not observed at the south or west building sites before March, 1979, does not alter the fact that plaintiff was put on notice of the possibility of a defect with all the Cor–Ten supplied by USS. The specifications for Cor–Ten used in all three buildings were nearly identical and the buildings were all constructed during the same general time period. In fact, the South Campus Center was "substantially completed" within two weeks of the "substantial completion" of the North Campus Center. Once MATC had notice of the possibility of a significant defect in the Cor–Ten steel itself, it follows that a reasonable person should have been aware of the fact that all the Cor–Ten supplied for all the projects might be defective.

In short, the limitations period does not begin to run until there is some notice of the injury and of a causal connection between the injury and the defendant, but

---

4. MATC argues that the Wisconsin Court of Appeals' decision in *Holy Family* should be disregarded because it is inconsistent with the Wisconsin Supreme Court's decision in *Borello*. MATC claims that the standard applied in *Holy Family* is inconsistent with *Borello* because it stated that plaintiffs need not be aware of the "specific causal factor of the injury." Assuming *arguendo* that the standard applied in *Holy Fam-*

*ily* is inconsistent with *Borello*, its strict holding is not. As discussed earlier, *Borello* makes clear that the nature of the injury must be taken into account. Unlike an internal physical injury, a leaking roof or unusual rusting in steel will certainly put a plaintiff on notice that it has suffered an injury and of the identity of the allegedly responsible defendant.

once there is such notice, *Borello* does not allow a party to extend the limitations period by its own protracted elimination of potential defendants. As the district court pointed out, MATC essentially argues that it should be able to delay the accrual of its cause of action at its own whim. Even now, USS vigorously denies that the Cor-Ten is defective. Under plaintiff's subjective theory, until the exact defect (if any) or the allegedly responsible defendant is determined to its own subjective satisfaction, the statute does not begin to run. As *Hansen* makes clear, however, the discovery rule is an objective standard that does not protect those plaintiffs who sleep on their rights. *See Hansen*, 113 Wis.2d at 559, 335 N.W.2d at 582.

The decision of the district court is AFFIRMED.