**LONE STAR GAS COMPANY, A DIVISION OF ENSERCH CORPORATION, Appellant,**

v.

**The STATE of Oklahoma and the Corporation Commission of the State of Oklahoma, Appellees.**

No. 61477.

Supreme Court of Oklahoma.

July 22, 1986.

As Modified on Denial of Rehearing Oct. 26, 1987.

**724**

Holliman, Langholz, Runnels & Dorwart by David W. Holden, and J. Michael Medina, Tulsa, for appellant.

James H. Bailey, Gen. Counsel, Corporation Com'n of Oklahoma and Gretchen Hoover, Deputy Gen. Counsel and Patrick D. Shore, Asst. Gen. Counsel, for appellees.

ALMA WILSON, Justice:

The Oklahoma Corporation Commission awarded Lone Star Gas Company [Appellant or Lone Star] a rate increase of $5,285,162 in Order No. 248292 issued November 15, 1983. The natural gas utility appeals this Order, challenging the adequacy of the rate increase by reason of the formula implemented by the Oklahoma Corporation Commission in calculating rate base and cost of gas attributable to Lone Star's investment and operation deemed to be used and useful to Oklahoma ratepayers. Lone Star contends that under the rate computation methodology utilized by the Commission, the amount of rate increase allowed does not provide an adequate return to Lone Star on its entire system-wide cost of gas investment.

## I

Initially, we dispose of the Oklahoma Corporation Commission's motion to dismiss this appeal in its Response to the Petition in Error. The motion is denied, for we find this appeal has been rightly brought within the proscriptions of *State ex rel. Cartwright v. Oklahoma Natural Gas*, 640 P.2d 1341 (Okl.1982).

## II

Lone Star operates its natural gas public utility in both Texas and Oklahoma. The Lone Star transmission system spans the heart of Texas, its southern plains and Gulf coast. Approximately 98.3% of Lone Star's system-wide demand is in the State of Texas. Comparatively, the Lone Star transmission system encompasses only a southeasternly portion of the State of Oklahoma, and accounts for 1.7% of total system utilization. Subsequent to the Natural Gas Policy Act of 1978, our own Legislature limited the increase in cost of gas dedicated to the Oklahoma intrastate market. Texas enacted no such legislation limiting the escalation in cost of Texas intrastate gas. As a result, Texas gas which is principally utilized in Lone Star's operation in Texas is priced much higher than Oklahoma gas utilized by the company in its operation in Oklahoma. Oklahoma demand is virtually served by the supply of lower cost Oklahoma gas. The supply of lower costing Oklahoma gas, in fact, exceeds Oklahoma ratepayers' demand and the Lone Star system carries the remainder of Oklahoma gas, not immediately utilized by Oklahoma ratepayers, south to distribution facilities in Texas to supplement gas supplies utilized by Lone Star's Texas ratepayers. Thus, Lone Star's average cost of gas is to the greatest extent influenced by the higher price of gas purchased and utilized in Texas. The cost to Lone Star of operation and utility transmission in Texas is accordingly higher than the cost of operation and utility transmission in Oklahoma. A practical consequence of assessing return on investment premised upon an average of

total cost of gas to Lone Star is that an increase in cost of gas of about $1.22/mcf, would be imposed upon Oklahoma ratepayers, though receiving no corresponding measure of benefit from the Lone Star system of delivery. Conversely, under this formula of investment, Texas ratepayers, who receive the great majority of benefits from the Lone Star system of delivery, pay less than such ratepayers would otherwise pay on an incremental or "used and useful" basis. Acknowledging the jurisdictional sovereignty of each State's right to regulate, control, and prescribe reasonable rates which may be charged for services to the public within its borders, Lone Star complains of what it styles a "regulatory squeeze" predicament. We note, however, that the antecedent for such circumstance cannot be arbitrarily assigned, but that remedial responsibility for any consequential underrecovery must be borne by the appropriate regulatory body.

■ The agencies charged with the regulation of the Lone Star utility in the respective jurisdictions are the Texas Railroad Commission, in Texas; and, in Oklahoma, the Oklahoma Corporation Commission. The Texas Railroad Commission previously ruled that within the State of Texas, Lone Star may charge "rolled in" rates to Texas ratepayers, calculated upon rate base and cost of gas on a "system-wide" average. The Oklahoma Corporation Commission, however, in the valid exercise of its constitutionally ordained prerogative, *See, Okla. Const.*, Art. 9, § 18, *infra*, determined allowable gas costs and rate base for charges for residential, commercial and industrial gas service to Oklahoma ratepayers, in pursuance of the rule of long standing in this jurisdiction that in determining the adequacy of a rate, a public utility will be held to be entitled to a fair return on the present value of its property which is *used and useful* in serving the Oklahoma public ratepayers. *Okmulgee Gas Co. v. Corporation Commission*, 95 Okl. 213, 220 P. 28 (1923), cited with approval most recently in *Southwestern Public Service Company v. State*, 637 P.2d 92 (Okl.1981). Lone Star, however, assails the traditional "used and useful" test, indicating that as long as each group of customers receives *any* benefit from its operation, a system-wide allocation of transmission plant in rate base is required. We cannot agree. System integration cannot be viewed in a vacuum. Whether or not the Oklahoma portion of the Lone Star system is or is not a separate system, or whether the entire system is or is not an integrated system, is not dispositive of the allocation of higher-priced gas to Oklahoma customers who receive comparatively little benefit from integration. A factual determination as regards system integration is separate and distinct from the legal standard for the determination of cost of gas. Rates may only be rolled in when:

(1) it is established that the availability of the higher-priced gas provides a tangible benefit to the consumers who will be allocated a portion of its cost, *and* [emphasis added]

(2) fundamental fairness requires sharing those costs. .

This independent "benefits and fairness" balancing test allocates the costs of a given facility or commodity among those customers who derive some *measure of benefit* from its availability. System integration may be justified as a basis for rolled-in rates only *to the extent* that it indicates that *benefits are shared* by all customers on the system. *Northern States Power Co. v. Hagen*, 314 N.W.2d 278 (N.D.1982). Whether viewed technically as based on cost of service or as an addition to cost of service, *rates must reflect a relationship to service or a benefit provided* in order not to be unreasonable or to discriminate unduly among classes. *LaRowe v. Kokomo Gas and Fuel Co.*, 179 Ind.App. 563, 386 N.E.2d 965, 975 (1979). The Court in *Hagen, supra,* balanced the benefits there in question and found that the benefits provided must be more substantial than those urged. In the present case, we likewise find that the alleged benefits to Oklahoma ratepayers are not sufficient to justify the imposition of higher "rolled-in" gas costs and that the Oklahoma Corporation Commission correctly determined that it would be fundamentally unfair for Okla-

homa customers to pay for the entirety of displaced gas.

■ The benefits to Oklahoma ratepayers, claimed by Lone Star to be system realignment, dually-fed mechanisms and gas displacement are insubstantial. The evidence discloses, that system realignment creates no new gas and is simply a policy decision made by Lone Star; that the dually-fed town mechanisms, all located in northern Texas, serve primarily to supply the Texas demand for gas; and that the benefits of gas displacement, which occurs in dually-fed cities, does not justify the increased cost to Oklahoma ratepayers which would result from full imposition of system-wide costs since the overwhelming demand for displacement results from gas consumption in Texas. The evidence additionally reflects that the major Texas demand is the reason for curtailments. Thus, curtailments for Oklahoma customers is actually increased by being on the Lone Star system because Lone Star curtails in a uniform manner across its system. Lower-cost Oklahoma gas is consumed more rapidly because it is transported to meet Texas demand, and the occasional need for emergency response in Oklahoma is attributable to the flow of excess gas from Oklahoma to feed the greater Texas demand. It is further notable that emergency response capability is available even from separate companies.

Based upon the evidence in this case, including Lone Star's own financial reports, we find that any alleged underrecovery is not attributable to delivery of service to Oklahoma ratepayers. Under-recovery, if such there be, appropriately must be borne by those creating same. The fact is, Oklahoma has an *excess* supply of lower priced gas and Lone Star greatly benefits by having Oklahoma on its system. After extensive hearings before the Oklahoma Corporation Commission, and upon careful consideration of the arguments and authorities of both parties, and the evidence in support thereof, the Oklahoma Corporation Commission rejected the Texas corporation's proposed methodology, and fashioned a formula which allocates gas costs and rate charges to Oklahoma ratepayers in accord-

ance with the used and useful test, *Okmulgee Gas Co., supra,* and the relative benefits conferred to Oklahoma ratepayers. *See, Northern States Power Co. v. Hagen, supra.*

### III

■ The power and authority to fix rates, charges and classifications of traffic for transportation and transmission companies, subject to review on appeal, is vested in the Oklahoma Corporation Commission by virtue of Article 9, § 18 of the Oklahoma Constitution, which in its full text provides as follows:

§ 18. *Powers and duties* —Notice before taking action—Process for witnesses—*Authority of Legislature* —Municipal powers

*The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor,* and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the *Commission shall,* from time to time, *prescribe and enforce against such companies,* in the manner hereinafter authorized, such *rates, charges,* classifications of traffic, *and rules and regulations,* and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void. *The Commission shall also have the right, at all times, to inspect the books and papers of all transportation and transmission companies doing business in this State, and to require from such*

companies, *from time to time, special reports and statements, under oath, concerning their business;* it shall keep itself fully informed of the physical condition of all the railroads of the State, as to the manner in which they are operated, with reference to the security and accommodation of the public, and shall, from time to time, make and enforce such requirements, rules, and regulations as may be necessary to prevent unjust or unreasonable discrimination and extortion by any transportation or transmission company in favor of, or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation, transmission, or otherwise, in connection with the public duties of such company. Before the Commission shall prescribe or fix any rate, charge or classification of traffic, and before it shall make any order, rule, regulation, or requirement directed against any one or more companies by name, the *company or companies to be affected by such rate, charge, classification, order, rule, regulation, or requirement, shall first be given,* by the Commission, at least ten days' *notice* of the time and place, when and where the contemplated action in the premises will be considered and disposed of, *and shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon,* to the end that justice may be done, and shall have process to enforce the attendance of witnesses; and before said Commission shall make or prescribe any general order, rule, regulation, or requirement, not directed against any specific company or companies by name, the contemplated general order, rule, regulation, or requirement shall first be published in substance, not less than once a week, for four consecutive weeks, in one or more of the newspapers of general circulation published in the county in which the Capitol of this State may be located, together with the notice of the time and place, when and where *the Commission will hear any objections which may be urged by any per-*

son interested, against the proposed order, rule, regulation, or requirement; and every such general order, rule, regulation, or requirement, made by the Commission, shall be published at length, for the time and in the manner above specified, before it shall go into effect, and shall also, so long as it remains in force, be published in each subsequent annual report of the Commission. *The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount;* but its authority to prescribe any other rules, regulations, or requirements for corporations or other persons shall be subject to the *superior authority of the Legislature to legislate thereon* by general laws: Provided, However, That nothing in this section shall impair the rights which have heretofore been, or may hereafter be, conferred by law upon the authorities of any city, town or county to prescribe rules, regulations, or rates of charges to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town, or county, so far as such services may be wholly within the limits of the city, town, or county granting the franchise. Upon the request of the parties interested, it shall be the duty of the Commission, as far as possible, to effect, by mediation, the adjustment of claims, and the settlement of controversies, between transportation or transmission companies and their patrons or employees. [Emphasis added.]

Review on appeal, of which the provision above refers, is prescribed at *Okla. Const.,* Art. 9, § 20, which states:

. . . . .

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Consti-

tution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. *In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.* Upon review, the Supreme Court shall enter judgment, either affirming or reversing the order of the Commission appealed from. [Emphasis added.]

. . . . .

We have repeatedly held that the fixing of rate schedules is a legislative process, and a public regulatory body acts in a legislative capacity in approving rate schedules. *See, e.g., Wiley v. Oklahoma Natural Gas Company,* 429 P.2d 957 (Okl.1967); *Chickasha Cotton Oil Company v. Corporation Commission,* 562 P.2d 507 (Okl.1977). The legislative character of utility ratemaking thus remains constant, whether it is exercised directly by the Legislature itself, or by a subordinate administrative body to whom the power of fixing rates has been delegated. On appeal, as the fixing of utility rates is a legislative function, our review of a Corporation Commission rate order promulgated in the valid exercise of its legislative authority extends no further than to determine whether such utility rate order is supported by the law and substantial evidence. *Okla. Const.,* Art. 9, § 20, *supra.* Only on issues actually involving constitutional violations which have been asserted below and preserved on appeal, is this Court constitutionally authorized to invoke independent judicial review. *Id.* We find the gravamen of this issue appeal involves the *adequacy* of the prescribed rate increase of $5,285,162 awarded to Lone Star. Inasmuch as the Corporation Commission is not bound by a single formula or combination of formulas in fixing the amount of utility rates, and no single formula or combination of formulas is exclusive or more favored than another, *Application of Arkansas Louisiana Gas Co.,* 558 P.2d 376 (Okl.1976), we find no justiciable basis to invoke an independent standard

of review herein upon propositions of error which essentially serve solely to challenge the specific formula or methodology of rate base calculation implemented by the Corporation Commission. The role of this Court, in conformity with the appropriate reviewing standard for utility orders, is not that of a *de novo* super-regulator. In instances such as this, it is the duty of this Court to determine only whether the findings and conclusions of the Oklahoma Corporation Commission are sustained by the law and substantial evidence in the record. *Okla. Const.* Art. 9, § 18, *supra. State ex rel. Cartwright v. Oklahoma Natural Gas, supra; El Paso Natural Gas v. Corporation Commission,* 640 P.2d 1336, 1338 (Okl. 1981). Where the state regulatory agency has implemented fair procedures, has taken a hard look at the issues, and has reached a fair and reasonable decision supported by the law and substantial evidence, this Court is bound to exercise restraint and to affirm the order, even where this Court might prefer a differing policy choice. It has been stated that the scope of review of utility commission orders is "the narrowest judicial review in the field of administrative law." *Potomac Electric Power Co. v. PSC,* 402 A.2d 14, 17 (D.C.Ct.App.1979). Moreover, if the effect of a rate order cannot be said to be unjust or unreasonable, judicial inquiry is at an end. *Southwestern Public Service Co. v. State,* 637 P.2d 92 (Okl.1981). We accordingly hold that the Order of the Oklahoma Corporation Commission is amply supported by substantial evidence, and the law, and provides Lone Star a reasonable return on its investment, used and useful to Oklahoma ratepayers.

## IV

■ With respect to the gas recovery cost issue, Lone Star asserts violation of a constitutional right in that they allege the Commission's decision to use an "Oklahoma-only" cost of gas formula is confiscatory and prevents Lone Star from recovery of its authorized rate of return, thereby violating Oklahoma and federal constitutional due process protection. Art. 9, § 20

of the Oklahoma Constitution mandates that this Court exercise its own independent judgment as to both the law and the facts with respect to this issue.

It is apparent that such an independent review would not dictate reversal of the Corporation Commission Order. An independent review of the evidence and the law demonstrates that the "regulatory squeeze" of which Lone Star complains as causing their under recovery of gas costs is not a result of the Commission's Order but rather is caused by the failure of the Texas customers to bear their fair share of the gas that is produced for them and sold to them. The evidence clearly demonstrates that the under recovery could be corrected by allowing a 1.8 ($0.018) cent per MCF increase over the entire system. Such an increase was allowed with respect to the Oklahoma rate payers. However, Lone Star wants the Oklahoma rate payer to bear the entire under recovery cost. This would require an increase of 92 cents ($.92) per MCF to satisfy the under recovery if borne entirely by the Oklahoma rate payers. There is nothing in the record that would dictate that the Oklahoma rate payer should bear the entire cost of what constitutes an under recovery of gas costs by Lone Star. We find no merit in this assertion of a due process violation.

### V

Consistent with our holding herein, and *Okla. Const.* Art. 9, § 18, which in pertinent part states: "The Commission shall have the right at all times, to inspect the books and papers of all transportation and transmission companies doing business in this State, and to require from such companies, from time to time, special reports and statements, under oath, concerning their business", we find no error in the Commission's requirement of Lone Star to provide such books and records concerning its business as to assist and expedite consideration of future rate increase applications.

### VI

The formula adopted by the Commission authorizes an increased recovery of $5,285,-162 over their previously authorized permanent rates premised on the Corporation Commission's finding that the fair value of Lone Star's rate base is $14,183,205. Lone Star, nevertheless, advocated a formula which attributes to Oklahoma ratepayers expenses of the Lone Star operation which are not used and useful to Oklahoma ratepayers. A utility rate which provides a fair return upon the fair value of Lone Star's property used and useful in supplying the service furnished can neither be said to be unreasonable or unjust, nor confiscatory in nature. *See, Lone Star Gas Co. v. Texas et al.,* 304 U.S. 224, 231, 58 S.Ct. 883, 886–87, 82 L.Ed. 1304 (1938). Lone Star here did not, in its hearings before the Corporation Commission adduce the quantum and character of proof necessary to establish the rate as unreasonable and unjust or constitutionally confiscatory. It, in essence, challenged the adequacy of rate increase and therein failed to meet its heavy burden below. On appeal, we are not at liberty to invoke a *de novo* review favoring a differing policy, but we are, rather, constrained to determine only whether the findings and conclusions of the Oklahoma Corporation Commission are sustained by the law and substantial evidence in the record. Accordingly, Order No. 248292 of the Oklahoma Corporation Commission entered November 15, 1983, is AFFIRMED.

SIMMS, C.J., DOOLIN, V.C.J., and KAUGER and SUMMERS, JJ., concur.

HODGES, LAVENDER, HARGRAVE and OPALA, JJ., dissent.