**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-039

Filing Date: January 24, 2013

Docket No. 30,786

SUSAN YURCIC,

      Plaintiff-Appellant,

v.

CITY OF GALLUP,
GALLUP FLYING SERVICE, and
MOLZEN-CORBIN & ASSOCIATES, P.A.

      Defendants-Appellees,

and

JOHN DOE CONTRACTOR,

      Defendant.

APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY
Grant L. Foutz, District Judge

Kelley Law Offices
Cody K. Kelley
Charlotte L. Itoh
Albuquerque, NM

for Appellant

Mason & Isaacson, P.A.
Lynn Isaacson
Gallup, NM

for Appellee City of Gallup

Keleher & McLeod, P.A.
Charles A. Pharris

Cassandra R. Malone
Albuquerque, NM

for Appellee Gallup Flying Service

Montgomery & Andrews, P.A.
Kevin M. Sexton
Jaime R. Kennedy
Albuquerque, NM

for Appellee Molzen-Corbin & Associates, P.A.

**OPINION**

**HANISEE, Judge.**

**{1}**      Susan Yurcic (Plaintiff) appeals the district court's grant of summary judgment based upon the statutes of limitations applicable to her lawsuit for damages caused by a flood retention pond located adjacent to her building.  Plaintiff argues that disputed material facts exist as to when Plaintiff knew or should have known about the injuries to her property and existence of her claims against Defendants.  Alternatively, Plaintiff argues that her property incurred separate injuries, and each new injury had its own discovery date and period of limitation.  For reasons explained below, we affirm in part, reverse in part, and remand to the district court.

**I.      BACKGROUND**

**{2}**      Plaintiff and Johnna Yurcic (a former plaintiff in this case and Plaintiff's late husband, who died during the pendency of this case) owned property with a building located next to the Gallup airport.  In 1998, a retention pond (the pond) was dug directly next to Plaintiff's property to address flooding and drainage concerns on the airport property.  The pond has neither an impermeable liner nor an automatic pumping system.  Since its construction, the pond has often filled with water and has overflowed following rainstorms.  No efforts have ever been made to pump or drain the pond.  Subsequently, water has remained in the pond for long periods of time, seeping into the ground.

**{3}**      In the years following the pond's construction, the Yurcics' building began exhibiting signs of damage to the foundation, walls, roof, and floors.  On May 12, 2008, the Yurcics filed a complaint for nuisance, negligence, and damages against the City of Gallup (the owner of the airport), Gallup Flying Service (the airport operator), Molzen-Corbin and Associates, P.A. (the designer of the pond), and a John Doe contractor (the unknown contractor who constructed the pond).  In 2010, the City of Gallup (the City), Gallup Flying Service, and Molzen-Corbin (collectively, Defendants) jointly moved for summary judgment premised upon expiration of the applicable statutes of limitations.  Defendants argued that,

2

as early as 1998 but no later than 2003, the Yurcics had notice that the pond was damaging their property and that they had a potential claim against Defendants. Defendants respectively contended that because a two-year statute of limitations applies to claims against the City and a four-year statute of limitations applies to claims against the other defendants, the Yurcics' 2008 lawsuit was barred in its entirety because the lawsuit was not brought within either requisite period of prescription.

**{4}** In response, Plaintiff asserted that evidence established the existence of disputed material facts as to whether she had notice of the damage and the potential claim against Defendants before the statutes of limitations ran. Plaintiff also argued that summary judgment was inappropriate because her property suffered successive injuries from the pond's seepage, for which new statutes of limitations accrued under *Valdez v. Mountain Bell Telephone Co.*, 107 N.M. 236, 239, 755 P.2d 80, 83 (Ct. App. 1988) (holding that the plaintiff could sue for successive seepage injuries caused by a utility pole, even though the statute of limitations expired on his initial claim, if the pole could be removed or the nuisance could be abated at a reasonable cost, or if the extent of the damages were not necessarily ascertainable when the plaintiff purchased the property). Following briefing by the parties and a hearing on Defendant's motion, the district court granted the motion. Plaintiff now appeals.

## II.     STANDARD OF REVIEW

**{5}** "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.* "We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted).

## III.     DISCUSSION

**A.     Disputed Material Facts Exist as to Whether Plaintiff Filed Her Complaint Within the Four-Year Statute of Limitations**

3

**{6}**     Plaintiff contends that disputed material facts exist as to whether the statute of limitations expired prior to her filing the complaint against Defendants. We first address the applicable statutes of limitations and then review Plaintiff's arguments regarding the existence of disputed facts.

**{7}**     Pursuant to NMSA 1978, Section 37-1-4 (1880), a four-year statute of limitations generally applies to claims "brought for injuries to property." Plaintiff concedes and we agree that a four-year statute of limitations generally applies to this suit under this statute. But Defendants argued below and continue to argue on appeal that a two-year statute of limitations applies to the City under NMSA 1978, Section 41-4-15 (1977) of the Tort Claims Act. In its order granting summary judgment, the district court did not specifically address whether it applied a two- or four-year statute of limitations to Plaintiff's claims against the City. Nonetheless, we conclude that, as a matter of law, the two-year statute of limitations applies to claims brought against the City.

**{8}**     Section 41-4-15(A) states that "[a]ctions against a governmental entity [must be] commenced within two years after the date of occurrence resulting in loss, injury or death[.]" In *Cole v. City of Las Cruces*, 99 N.M. 302, 305, 657 P.2d 629, 632 (1983), our Supreme Court expressly stated that a city is a governmental entity "because of its legal status as a local public body and as a political [subdivision] of the state." (alteration in original) (internal quotation marks and citations omitted). Pursuant to *Cole*, the City of Gallup likewise is both a public body and political subdivision of the state. Thus, it is clearly a governmental entity, and the two-year statute of limitations applies to Plaintiff's claim against it.

**{9}**     Knowing the applicable periods of limitation, we move on to discuss the key issue in this case:  does evidence conflict as to when the existence of notice to Plaintiff commenced the periods of limitation? "[I]n actions for injuries to . . . property, the cause of action shall not be deemed to have accrued until the . . . injury . . . complained of, shall have been discovered by the party aggrieved." NMSA 1978, Section 37-1-7 (1880). "[U]nder the discovery rule, the statute of limitations begins when the plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action." *Gerke v. Romero*, 2010-NMCA-060, ¶ 10, 148 N.M. 367, 237 P.3d 111 (internal quotation marks and citation omitted); *see Wilde v. Westland Dev. Co., Inc*., 2010-NMCA-085, ¶ 18, 148 N.M. 627, 241 P.3d 628 ("For purposes of determining when the cause of action accrues, discovery is defined as the discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of [the] fraud or other injury." (alteration in original) (internal quotation marks and citation omitted)). This means that "the statute of limitations is not tolled because a claimant does not have knowledge of the full extent of injury, but that the time period begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." *Gerke*, 2010-NMCA-060, ¶ 10 (citation omitted). We subsequently refer to the standard set forth in the discovery rule, which requires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the

cause of action, as "inquiry notice." *See TRW Inc. v. Andrews*, 534 U.S. 19, 30 (2001) (stating that certain events would place the plaintiff on "inquiry notice, and the discovery rule would trigger the limitations period at that point, only if a reasonable person in [the plaintiff's] position would have learned of the injury in the exercise of due diligence." (internal quotation marks omitted)); *Rhinehart v. Nowlin*, 111 N.M. 319, 328, 805 P.2d 88, 97 (Ct. App. 1990) ("Whatever puts a party upon inquiry is sufficient 'notice' and the party has a duty to inquire or he will be chargeable with all the facts.").

**{10}** "Historically, the courts of this state have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn." *Williams v. Stewart*, 2005-NMCA-061, ¶ 16, 137 N.M. 420, 112 P.3d 281. "As a general rule, issues as to whether a claim has been timely filed or whether good cause exists for delay in filing an action are questions of fact, and such issues only become issues of law when the facts are undisputed." *Durham v. Sw. Developers Joint Venture*, 2000-NMCA-010, ¶ 44, 128 N.M. 648, 996 P.2d 911. "Where there are disputed questions of material fact as to whether a plaintiff is barred by the statute of limitations, these questions are to be decided by a jury." *Medina v. Fuller*, 1999-NMCA-011, ¶ 22, 126 N.M. 460, 971 P.2d 851 (alteration, internal quotation marks, and citation omitted).

**{11}** In granting summary judgment, the district court determined that Plaintiff had sufficient notice of facts constituting a cause of action against Defendants at the time of at least one of three instances of notice argued by Defendants. In their motion to dismiss, Defendants asserted that Plaintiff acquired inquiry notice of the cause of action first in 1998, when the pond was constructed, second in 2001, and third in 2002 or 2003. Each instance of notice asserted by Defendants occurred in excess of four years from filing the complaint. We analyze the evidence presented by the parties below to determine whether there are any disputed material facts as to whether Plaintiff was or should have been on notice of a claim against Defendants at the time of each asserted instance.

**{12}** Defendants first argued that sometime in 1998, Plaintiff noticed that "the northeast corner of the Yurcic Building had some structural-type cracks in the masonry, the slab had some cracks in it, and the corner of the building was sinking." Defendants supported their argument with testimony from Pat Mataya, a contractor who remodeled the building in 1998. In a deposition, Mataya testified that Johnna Yurcic knew of and was concerned about the above described structural-type cracks in the masonry and foundation of the building. He added that Johnna Yurcic expressed concerns that the pond was causing some of the problems with the building. To rebut this evidence, Plaintiff presented testimony of Bob Witte, a former tenant of Plaintiff's building. Prior to his initial occupation of the building in March 1998, Witte examined the premises and found no noticeable problems with the exterior or interior structure of the building at that time. Witte also testified that he first noticed problems with the building's exterior in 2001. We conclude that this conflicting testimony regarding the presence or absence of visible signs of building damage presents a question of fact as to whether there was any visible structural damage to the building in 1998 that would have then placed Plaintiff on inquiry notice of a cause of action against

5

Defendants.  Moreover, reasonable jurors listening to this conflicting testimony could disagree about the veracity of Mataya's testimony or the timing of Mataya's conversation with Johnna Yurcic about the pond.  It would therefore be improper for the district court to have granted summary judgment on the basis of the 1998 alleged acquisition of notice.

**{13}**  Next, Defendants argued that Plaintiff had inquiry notice of a claim against Defendants when Witte reported a crack in the floor tiles of the building in 2001. Defendants stated and Plaintiff does not contest that in 2001, "Witte noticed [and reported to Johnna Yurcic] that the tiles laid during the 1998 [r]emodel were separating and that there was a quarter-inch crack in the floor that ran the entire length of the Yurcic building." Plaintiff argues that this fact alone is legally insufficient to cause a reasonable person to make an inquiry leading to the discovery of the cause of action against Defendants.

**{14}**  In district court, Defendants did not offer any proof that this crack would lead a reasonable person to inquire as to *the pond's* deteriorative effect on the building's foundation.  Due to the absence of evidence within the record linking the appearance of the crack with the nearby pond, we are unable to eliminate contrary explanations for this crack as a matter of law.  In fact, Mataya's testimony attributed the crack to a cause *other than* the pond.  In response to Defendants' question regarding the crack, Mataya explained that the crack "might have just been a control joint. . . . [W]hen they pour the [concrete] slab, sometimes they'll have a control joint to separate the slabs, or the[y are] saw cut."  Because the crack in the tile floor might have been caused by an extrinsic source, such as a control joint, and there was then no evidence specifically linking the crack to the pond, we conclude that mere knowledge of the existence of the crack in 2001 was legally insufficient to place Plaintiff on inquiry notice of a claim against Defendants.

**{15}**  Lastly, relying on testimony from Witte, Defendants argue that in 2002 or 2003, Johnna Yurcic knew of the combination of structural damage and saturated ground sufficient to have acquired inquiry notice of the claim against Defendants.  Witte initially testified that in 2002 or 2003, he noticed and then informed Johnna Yurcic about a crack in the foundation of the northeast corner of the building, where the ground was "mushy."  Witte described the damage as a "stair step crack" that extended ten feet on either side of the northeast corner of the building.  Witte testified that he notified Johnna Yurcic of the crack and told him that he believed the pond was the cause of the building's damage.  Based on that conversation, Johnna Yurcic sent a person to inspect the crack shortly thereafter.

**{16}**  In response, Plaintiff countered that this conversation did not occur until 2004, and therefore a genuine issue of material fact exists as to whether Plaintiff had notice of the damage prior to May 12, 2004 (more than four years before filing this case).  Plaintiff cited Witte's own subsequent testimony during the same deposition, where Witte clarified that he noticed the crack in the northeast corner of the building sometime after appearing at a city council meeting to express his concerns about mosquitos breeding in the pond.  Witte stated that he noticed the foundational crack "[a]nywhere from six months to a year" after the city council meeting.  When pressed for a greater level of specificity as to the timing of the

6

notifying conversations, Witte responded that his "time-frame on this" was unclear as to the precise date. Plaintiff argued below and continues to assert on appeal that the city council meeting took place in June 2003. Yet neither Defendants nor Plaintiff provided evidence as to when the city council meeting in question took place.

**{17}** Because of the express uncertainty of Witte's recollection, combined with the parties' inability to ascertain with greater precision the date on which the city council meeting took place, we conclude that Witte's testimony is inconclusive as to precisely when, within the window of time between 2002 and 2004, he noticed and reported to Johnna Yurcic the damage to the northeast corner of the building. Because this last of the asserted grounds for summary judgment was also premised upon what are actually disputed material facts, it too fails to factually establish that Plaintiff had inquiry notice in excess of four years from when the Yurcic complaint was filed.

**{18}** Because material disputed facts exist about when Plaintiff acquired a sufficient level of inquiry notice as to the existence of any claim assertable against Defendants, summary judgment as to Gallup Flying Service and Molzen-Corbin was improper. We therefore reverse the district court's order as to those Defendants.

**B.      Plaintiff Had Notice of the Claims Against the City More Than Two Years Before Filing**

**{19}** Also based upon the foregoing discussion of evidence, it appears that Plaintiff acquired inquiry notice of the claim against the City more than two years before the Yurcic lawsuit was filed. Defendants' evidence establishes that sometime in 2004 or earlier, Johnna Yurcic received notice that the foundation on the northeast side of the building was substantially cracking, that the ground around it was saturated with water, and that his tenant, Witte, by then believed the pond to be the cause of the damage. The only arguments Plaintiff makes to rebut Defendants' contentions about notice of the moistened ground and the crack in the building's northeast corner is (1) that the notice occurred sometime within a year after June 2003, the date on which Plaintiff alleges the city council meeting took place; and (2) that she personally—distinct from her husband Johnna Yurcic—never had notice of damage to the building until 2006.

**{20}** First, the facts of which Witte notified Johnna Yurcic by June 2004 placed Plaintiff on inquiry notice more than three years before the suit was brought. Unlike the earlier, more questionable evidence of the crack in the floor tiles, this latter evidence provided ample indicia of a causal nexus between the pond's saturation of the ground and the building's worsening structural damage. Evidence of the foundation's twenty-foot-long stair step crack, surrounded by soggy ground, and the tenant's communication with Johnna Yurcic that he believed the pond to be causing the foundational damage was sufficient to notify Plaintiff of both (1) serious structural damage requiring further investigation, and (2) a causal link between the pond and the injury to Plaintiff's property. *See generally Palumbo v. Roberti*, 839 F. Supp. 80, 85 (D. Mass. 1993) (holding that inquiry notice was satisfied where the

7

plaintiff had knowledge both of oil stored in the nearby neighboring building and of damage to goods in her building caused by oil seepage); *Redland v. Tharp*, 498 P.2d 1240, 1242 (Wyo. 1972) (concluding that the plaintiffs were on notice of their claim regarding seepage "when the area of [the] plaintiffs' land became so boggy that farm machinery, vehicles, and equipment became stuck").

**{21}** Second, to the extent Plaintiff argues that she did not individually gain inquiry notice of the damage until 2006, we conclude that the requirement of diligence as a co-owner of the visibly damaged property warrants enforcement of the statute of limitations against her. Under the discovery rule, "the statute of limitations begins to run when the plaintiff knows or, with reasonable diligence should know, of his injury and its cause." *Gerke*, 2010-NMCA-060, ¶ 12; *see McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 37, 143 N.M. 740, 182 P.3d 121 ("In New Mexico, a cause of action arises when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." (internal quotation marks and citation omitted)); *Williams v. Stewart*, 2005-NMCA-061, ¶ 12, 137 N.M. 420, 112 P.3d 281 (stating that "[t]he discovery rule provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists" (internal quotation marks and citation omitted)); *Milwaukee Area Vocational Technical & Adult Educ. Dist. v. U.S. Steel Corp.*, 847 F.2d 435, 440 (7th Cir. 1988) (stating that "the discovery rule is an objective standard that does not protect those plaintiffs who sleep on their rights"); *H. F. Wilcox Oil & Gas Co. v. Diffie*, 186 F.2d 683, 697 (10th Cir. 1951) (concluding that an action brought by the plaintiff, the part-owner of a mine, against his co-owner for conversion was barred by the statute of limitations where the plaintiff failed to exercise diligence by examining his co-owner's records, or asking the co-owner for a report regarding the subject mine); *Martin v. Esponge*, 388 So. 2d 128, 129 (La. Ct. App. 1 Cir. 1980) (stating that in the context of a leasing agreement, "a co-owner acts not only for himself but also as the agent of his other co-owners" (internal quotation marks and citation omitted)). Here, it is clear that Johnna Yurcic, Plaintiff's husband and co-owner of the property, discovered the damage no later than when it was reported to him by his tenant, Witte. If Plaintiff had been reasonably diligent as a co-owner, she would have, at a minimum, communicated with her co-owner or tenant regarding the status of her property. The assertion that Plaintiff did not engage in communications regarding the seepage and damage, and the absence of her actual knowledge of it, does not absolve Plaintiff of her duty to be reasonably diligent in discovering the injury and cause.

**{22}** Thus, the claims against the City are time barred unless Plaintiff can succeed under her theory that each successive injury gave rise to a new cause of action with its own discovery date and period of limitation. We note that this theory bears the potential to also affect Plaintiff's claim with regard to the other Defendants.

**C.    Summary Judgment Was Improper Under *Valdez***

**{23}** Plaintiff also contends that summary judgment was improper because successive injuries occurred to the property due to the pattern of ongoing seepage and, as a result, under

*Valdez*, separate causes of action accrued with each new injury to the property. Plaintiff therefore asserts that, under *Valdez*, her claims for successive injuries arising within the statute of limitations are not barred. We must determine whether under *Valdez*, Plaintiff's injuries constitute separate causes of action with their own statutes of limitation. We note that if Plaintiff can only succeed in bringing her suit under the successive injury theory established by *Valdez*, her recovery is limited to those injuries incurred within the respective two- and four-year statutes of limitations. *McNeill v. Rice Eng'g & Operating, Inc.*, 2006-NMCA-015, ¶ 29, 139 N.M. 48, 128 P.3d 476 (stating that, "[a]lthough . . . some jurisdictions set the cause of action accrual date for a claim for damages for all injuries from the continuing trespass to be the date of the last injury[, under *Valdez*, t]he accrual date is the date of each particular injury which, for an intermittent injury, is the date of that discrete injury, or for a continuous injury, each new day").

**{24}** In *Valdez*, a property owner sued a public service company for improperly maintaining a telephone pole near a drainage ditch on the south side of the plaintiff's property, which caused water to back up onto and seep into the owner's land. 107 N.M. at 237-38, 755 P.2d at 81-82. Within two or three years of purchasing his home, the plaintiff observed that "the land on the south side of his home was constantly damp." *Id*. at 238, 755 P.2d at 82. Almost a decade after purchase, the plaintiff noticed that walls inside his home were cracking and was notified by his insurance company that the cracks were caused by seepage. *Id*. Several years after the initial wall cracking, the foundation on the south side of his house began sinking, cracking, and falling apart. *Id*. Under the facts of *Valdez*, it appeared that the plaintiff knew, well beyond the applicable statute of limitations on his initial claim, that his property had suffered damage as a result of water seepage. *Id*. On appeal we considered, as a matter of first impression, whether a cause of action can accrue with every new injury to the plaintiff's property or whether the plaintiff's complaint was time-barred because the statute of limitations had already run on the first injury caused by the recurring seepage. *Id*.

**{25}** After examining case law from other states dealing with this issue, we held that, when the "nuisance is of permanent character, and its construction and continuance are necessarily an injury, the damage is original, and . . . the statute of limitations begins to run upon the construction of the nuisance." *Id*. at 240, 755 P.2d at 84 (internal quotation marks and citation omitted). On the other hand, we concluded that the plaintiff in *Valdez* could recover for successive injuries from a temporary structure, which we defined as either "a permanent structure which is not per se injurious" but which becomes injurious under certain, temporary conditions, or a structure that "could possibly be easily removed at a reasonable expense." *Id*. In other words, if the nuisance is permanent and therefore necessarily injurious, Plaintiff would not be able to recover if the statute of limitations has run on her initial claim because subsequent causes of action are not created by subsequent injuries. But, if the nuisance is temporary, Plaintiff could sue for later injuries caused by the same seepage, as the statute of limitations would run anew with subsequent injuries. We defined "[a] permanent structure or nuisance [a]s one that may not be readily remedied, removed or abated at a reasonable expense, or one of a durable character evidently intended

9

to last indefinitely, costing as much to alter as to build." *Id*. at 239, 755 P.2d at 83. In sum, the nuisance is temporary if either the structure can be removed at a reasonable cost or the nuisance can be remedied or abated at a reasonable cost.

**{26}** This Court in *Valdez* explained that, "[the p]laintiff alleges that the utility pole . . . is a permanent structure which is not per se injurious, but becomes so with excessive rain or snow. As such, the nuisance is temporary." *Id*. at 240, 755 P.2d at 84. We also came to the conclusion that "the utility pole . . . could probably be easily removed at a reasonable expense, and is, therefore, a temporary structure." *Id*. We held that, "[i]n either case, successive actions may be brought because each new injury allows a new cause of action to accrue." *Id*. Additionally, we went on to hold that "successive recoveries should be allowed following each injury, where the improvement is negligently constructed and the damage to plaintiff's property could not be reasonably calculated at the time of the completion of the construction thereof." *Id*. With these principles in mind, we concluded that the *Valdez* plaintiff could sue for successive injuries caused by the utility pole, even though the statute of limitations expired on his initial claim, because "the nuisance . . . is abatable[,] the injuries are recurring[,] the extent of the damages were not necessarily ascertainable when plaintiff purchased the property[,] and the nuisance is not necessarily injurious." *Id*.

**{27}** In applying *Valdez* to the case at bar to determine whether Plaintiff can sue for successive injuries, we identify the pertinent factual inquiries to be: (1) whether the pond can be removed at a reasonable cost, (2) whether the seepage can be remedied or abated at a reasonable expense, and (3) whether the damages caused by the seepage on Plaintiff's property could have been ascertainable when the pond was built. Neither party below produced evidence to address these issues.

**{28}** On appeal, Defendants nonetheless contend that summary judgment was proper because "Plaintiff presented no evidence below to demonstrate that the retention pond was a temporary structure such that the rule in *Valdez* applied." Defendants support this assertion with a citation and parenthetical indicating that when Defendants have met their burden of demonstrating a prima facie case in support of summary judgment, Plaintiff "bears the burden of demonstrating the existence of specific facts to support a trial on the merits." Implicit in this assertion is that Defendants have successfully made a prima facie case for summary judgment. Although Defendants correctly state the standard for shifting burdens of proof, we conclude that they failed to make a prima facie showing below.

**{29}** "In the civil litigation context, the statute of limitations defense is generally an affirmative defense[.]" *State v. Kerby*, 2007-NMSC-014, ¶ 13, 141 N.M. 413, 156 P.3d 704. When asserting an affirmative defense as grounds for summary judgment, the "[d]efendant carrie[s] the burden of making a prima facie showing as to each element of the definition [of the defense]." *Solorzano v. Bristow*, 2004-NMCA-136, ¶ 15, 136 N.M. 658, 103 P.3d 582 (discussing the moving party's burden in seeking summary judgment against the plaintiff on the affirmative defense of suicide); *see Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (stating that the moving party has the initial burden of

10

establishing a prima facie case for summary judgment). Prima facie case is defined as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Black's Law Dictionary* 1310 (9th ed. 2009); *see Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 163, 848 P.2d 1086, 1090 (Ct. App. 1993) (stating that a prima facie showing is defined as "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted" (internal quotation marks and citation omitted)).

**{30}** Since the statute of limitations is Defendants' affirmative defense and since Defendants are the moving parties, they have the burden of producing evidence regarding *every* element of that defense. Here, the trier of fact cannot infer the necessary facts to conclude that the suit is time barred without Defendants producing sufficient evidence to address the issues pertinent to a *Valdez* determination. Thus, in order to obtain summary judgment on the statute of limitations affirmative defense, Defendants have the duty to produce sufficient evidence showing that the pond and seepage are permanent and that the damages were ascertainable at the time the pond was constructed. *Valdez*, 107 N.M. at 240, 755 P.2d at 84. Because Defendants failed to make the requisite prima facie case, Plaintiff bore no obligation to produce evidence to the contrary.

**{31}** Defendants argue that *Valdez* does not apply to this case, in part because the injuries were not successive. We conclude there is abundant evidence to the contrary sufficient to create a disputed issue of material fact. In arguing otherwise, Defendants rely solely on testimony from Witte that the ground was "constantly wet." First, this appears to misconstrue Witte's testimony, in which he then discussed the character of the ground during monsoon season. Second, Plaintiff argued from the inception of this case that "[w]hen the pond is full due to precipitation[,] the water is not contained inside the Airport's property . . . but instead the water migrates beneath the surface into the Yurcics' property." The record appears to provide support to this theory that the pond was only a nuisance when full, particularly during monsoon season. Moreover, the record shows that there was a series of different injuries to the building: different cracks and damage developed in the foundation, walls, and ceiling over time. Lastly, it appears that Defendants misconstrue our case law regarding the characteristics of successive injuries. In *Valdez*, the seepage caused the ground to be constantly damp, and such seepage resulted in a series of injuries, similar to those which manifested in the case at bar. *See Valdez*, 107 N.M. at 238, 755 P.2d at 82. Based on the standard exemplified in *Valdez*, Plaintiff appears to have incurred successive injuries. For these reasons, we conclude that at the very least, disputed material facts exist regarding whether the injuries were successive.

**{32}** Defendants argue that because "Johnna Yurcic was aware of specific damages to his property [between 1998 and 2003] and believed that the pond was to blame[,]" he cannot recover under the continuing wrong doctrine stated in *Valdez*. For support, Defendants cite out-of-state case law for the proposition that "the doctrine cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir.

11

1996) (internal quotation marks and citation omitted). We disagree because first, as determined above, Defendants have yet to prove that prior to June 2004, Johnna Yurcic was or should have been aware of a definite injury caused by Defendants sufficient to constitute inquiry notice. Second, Defendants appear to misconstrue the principle regarding definite and discoverable injuries, which was originally derived from *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1992). The court in *Wilson* explained that a definite and discoverable injury was one resulting from a tortious act which "caused direct damages that occurred at a certain point in time—resulting in immediate and direct injury . . . with consequential effects." *Id.* (alteration in the original) (internal quotation marks and citation omitted). In the case at bar, the damages occurred gradually over a long period of time, in relation to the rise and fall of the pond water levels. There was no one specific point in time at which the building suddenly sunk into the soggy ground, breaking the foundation and cracking the building's walls, floors, and ceiling. The injury was gradual and incremental, not immediate. Thus, the continuing wrong theory appears to be applicable to this case.

**{33}** Arguing again that *Valdez* is inapplicable, Defendants cite Colorado case law for the proposition that claims involving seepage arise when the property is first visibly affected by the seepage. *See Greene v. Green Acres Constr. Co.*, 543 P.2d 108 (Colo. App. 1975). We note that *Greene* is legally distinct from the present inquiry regarding successive injuries. Rather, it deals with the initial discovery of the injury, which is a topic we have already dealt with above when analyzing the issue of when Plaintiff acquired notice of the Yurcic cause of action. Thus, we are unpersuaded by Defendants' assertion that this case is more similar to *Greene* than *Valdez*.

**{34}** Since Defendants failed to present sufficient evidence establishing that separate causes of action did not accrue with each ensuing injury to the property and therefore failed to demonstrate that *Valdez* is inapplicable here, summary judgment was improper. We thus reverse the district court on this ground as well.

## C.    Plaintiff Failed to Preserve Her Estoppel Argument

**{35}** Finally, Plaintiff argues the doctrine of equitable estoppel tolled the statute of limitations in this case. Yet Plaintiff never argued estoppel below. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). The preservation rule "provides the lower court an opportunity to correct any mistake, . . . provides the opposing party a fair opportunity to show why the court should rule in its favor, and . . . creates a record from which this Court may make informed decisions." *State v. Lopez*, 2008-NMCA-002, ¶ 8, 143 N.M. 274, 175 P.3d 942 (alterations in the original) (internal quotation marks and citation omitted).

**{36}** Here, Plaintiff argues that she raised the issue below in her answer brief responding to the motion to dismiss. Yet the answer brief merely stated in a footnote that "Plaintiff also notes that she and Johnna Yurcic held off on filing their complaint while waiting for a

12

response to the tort claims notice that they had filed in June 2007. A response was not received on behalf of the City of Gallup until September 2007." We conclude that this footnote was insufficient to preserve the issue of estoppel for appellate review, as it never invoked a ruling on the issue from the district court, and it failed to alert Defendants to an opportunity to argue against estoppel below. As a result, we have no record from which to render an informed ruling on the issue. We therefore decline to address Plaintiff's estoppel argument on appeal. *See Andalucia Dev. Corp. v. City of Albuquerque*, 2010-NMCA-052, ¶ 25, 148 N.M. 277, 234 P.3d 929 ("Appellate courts will not consider issues that went unpreserved at the district court level.").

## IV.   CONCLUSION

**{37}**   We reverse the district court's order of summary judgment because (1) disputed material facts exist as to whether the statute of limitations barred Plaintiff's initial claims against Gallup Flying Service and Molzen-Corbin, and (2) disputed material facts exist regarding whether separate causes of action accrued with each new injury to the property under *Valdez*. We remand to the district court for proceedings consistent with this Opinion.

**{38}**   **IT IS SO ORDERED.**

 

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Yurcic v. City of Gallup_, No. 30,786**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Remand
Standard of Review

**CIVIL PROCEDURE**
Estoppel
Limitation of Actions
Summary Judgment

**GOVERNMENT**

Municipalities

**PROPERTY**
Trespass

**TORTS**
Notice
Tort Claims Act